United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AF HOLDINGS LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>DOES 1-97,<br><br>    Defendants.<br>_____/ | No. C-11-03067-CW  (DMR)<br><br>**ORDER GRANTING PLAINTIFF'S *EX PARTE* APPLICATION FOR LEAVE TO TAKE EXPEDITED DISCOVERY IN PART** |

    Plaintiff AF Holdings LLC ("Plaintiff") moves the court *ex parte* pursuant to Federal Rules of Civil Procedure 26 and 45 for leave to take expedited discovery so that it may unearth the identities of the as-of-yet unnamed defendants ("Defendants") in this action. For the reasons provided below, the court grants Plaintiff's request with respect to Defendant Doe 1. The court denies without prejudice Plaintiff's request for expedited discovery with respect to Defendants Does 2-97. Plaintiff may renew the request with respect to Does 2-97 after a determination by the District Judge that Defendants Does 2-97 are properly joined in this case.

**I. Expedited Discovery**

    This action seeks to stop Defendants from reproducing and distributing Plaintiff's copyrighted work Sexual Obsession ("the Work") via peer-to-peer ("P2P") file swapping networks. (Compl. ¶¶ 1, 7.) Specifically, Plaintiff contends that by using the BitTorrent protocol, Defendants have committed copyright infringement under 17 U.S.C. §§ 101-1322 and engaged in a civil

conspiracy under California law to do so. (Compl. ¶¶ 25-39.) Because the alleged infringement occurred on the Internet, Defendants acted under the guise of their Internet Protocol ("IP") addresses rather than their real names. (Compl. ¶ 8.) Therefore, Plaintiff cannot determine Defendants' true identities without procuring the information from Defendants' respective Internet Service Providers ("ISPs"), which can link the IP addresses to a real individual or entity. (Compl. ¶ 8.) Consequently, Plaintiff asks the court to grant it expedited discovery to issue subpoenas to the relevant ISPs so that the ISPs will produce the name, address, telephone number, e-mail address, and Media Access Control information attached to each IP address that Plaintiff to date has discovered through its own investigations. (Pl.'s *Ex Parte* Application for Leave to Take Expedited Discovery ("Pl.'s Mot.") 1-3, Ex. A.) Plaintiff also notes that "time for discovery is of the essence. Typically, ISPs keep log files of subscriber activities for only limited periods of time before erasing the data." (Pl.'s Mot. 4 (citing Hansmeier Decl. ¶¶ 21-22, June 22, 2011; Gibbs Decl. ¶ 5, June 22, 2011) (internal citation omitted).)

Although in the Ninth Circuit courts disfavor exceptions to the general rules of discovery, *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 577 (N.D. Cal. 1999) (citing *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)), a court will grant a motion for expedited discovery "upon a showing of good cause," *Am. Legalnet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1066 (C.D. Cal. 2009) (quoting *In re Countrywide Fin. Corp. Derivative Litig.*, 542 F. Supp. 2d 1160, 1179 (C.D. Cal. 2008)) (quotation marks omitted); *accord Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 275 (N.D. Cal. 2002), unless the court finds that discovery "would not uncover [the defendants'] identities, or that the complaint would be dismissed on other grounds." *Gillespie*, 629 F.2d at 642 (citations omitted). Good cause exists where "the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party."[1]

---

[1] The court notes that due to the necessarily *ex parte* nature of Plaintiff's motion, Plaintiff faces no adversaries to fully expound on the prejudices that Defendants may face if the court grants Plaintiff expedited discovery. However, other measures to at least partially compensate for this inequity are at the court's disposal. *See, e.g.*, Brief for Amici Curiae at 3, 18-19, *Call of the Wild Movie, LLC v. Does 1-358*, No. 10-CV-455 (D.D.C. Jan. 3, 2011) (recommending that courts order ISPs to notify customers of impending subpoenas so that customers have opportunity to quash); *see also Doe v. 2TheMart.com*, 140 F. Supp. 2d 1088, 1097 (W.D. Wash. 2001) (granting motion to quash subpoena seeking identities of non-party anonymous posters to Internet chat room).

*Am. Legalnet, Inc.*, 673 F. Supp. 2d at 1066 (quoting *In re Countrywide Fin. Corp. Derivative Litig.*, 542 F. Supp. 2d at 1179) (quotation marks omitted); *accord Semitool, Inc.*, 208 F.R.D. at 276. The court must perform this evaluation in light of "the entirety of the record . . . and [examine] the reasonableness of the request in light of all the surrounding circumstances." *Semitool, Inc.*, 208 F.R.D. at 275 (citation & quotation marks omitted) (emphasis removed); *see Am. Legalnet, Inc.*, 673 F. Supp. 2d at 1067. In this particular context, the court must balance "the need to provide injured parties with an [sic] forum in which they may seek redress for grievances" against "the legitimate and valuable right to participate in online forums anonymously or pseudonymously . . . . without fear that someone who wishes to harass or embarrass them can file a frivolous lawsuit and thereby gain the power of the court's order to discover their identity." *Columbia Ins. Co.*, 185 F.R.D. at 578; *see also London-Sire Records, Inc. v. Doe 1*, 542 F. Supp. 2d 153, 163 & nn. 10-11, 179 (D. Mass. 2008) (noting that even copyright infringing file downloading entitled to degree of First Amendment protection) (stating that court must consider "the expectation of privacy held by the Doe defendants, as well as other innocent users who may be dragged into the case (for example, because they shared an IP address with an alleged infringer.)" (citation omitted)).

Plaintiff has shown good cause to partake in limited expedited discovery. First, without issuing subpoenas to the ISPs at this time, Plaintiff will "have no other way to obtain this most basic information," Defendants' identities, without which the lawsuit cannot proceed. *UMG Recordings, Inc. v. Does 1-4*, No. 06-652, 2006 WL 1343597, at *1 (N.D. Cal. Apr. 19, 2006) (not reported in F. Supp.); *accord Diabolic Video Prods., Inc. v. Does 1-2,099*, No. 10-CV-5865, at *4-5 (N.D. Cal. May 31, 2011) (order granting in part motion for leave to take limited discovery prior to Rule 26(f) conference); *Semitool, Inc.*, 208 F.R.D. at 276. (*Accord* Hansmeier Decl. ¶ 21; Gibbs Decl. ¶ 2.) Furthermore, there exists a high risk that the ISPs may destroy the information Plaintiff seeks and thereby preclude Plaintiff from discovering Defendants' true identities. *UMG Recordings, Inc.*, 2006 WL 1343597, at *1. (*Accord* Hansmeier Decl. ¶ 22; Gibbs Decl. ¶ 5.) Finally, copyright infringement claims "necessarily involve[] irreparable harm to Plaintiff[], as a copyright holder is presumed to suffer irreparable harm as a matter of law" when the ambit of its copyright is invaded. *UMG Recordings, Inc.*, 2006 WL 1343597, at *1. Nevertheless, the court grants Plaintiff expedited

discovery only in part because the court finds that the complaint against the remaining Doe Defendants "would be dismissed on other grounds," in this case for improper joinder. . *See Gillespie*, 629 F.2d at 642.

## II. Joinder of Defendants

Rule 20 of the Federal Rules of Civil Procedure, in relevant part, permits a plaintiff to join multiple defendants into one action if "(A) any right to relief is asserted against them . . . arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). When determining whether defendants are joined properly, the court should "liberally construe[] [the requirements] in the interest of convenience and judicial economy in a manner that will secure the just, speedy, and inexpensive termination of the action." *Call of the Wild Movie, LLC v. Does 1-1,062*, No. 10-455, 2011 WL 996786 (D.D.C. Mar. 22, 2011) (citation & quotation marks omitted); *see United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966); *Diabolic Video Prods., Inc.*, No. 10-CV-5865, at *5. If defendants do not satisfy the test for permissive joinder, the court may sever the misjoined parties, "so long as no substantial right will be prejudiced by the severance." *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997) (citation omitted); *see* Fed. R. Civ. P. 21 ("Misjoinder of parties is not a ground for dismissing an action.").

Attempts to join numerous defendants in a single action for copyright infringement over P2P networks historically have failed. For example, in *Interscope Records v. Does 1-25*, No. 4-CV-197, 2004 U.S. Dist. LEXIS 27782 (M.D. Fla. Apr. 1, 2004) (not reported in F. Supp.), and *Elektra Entertainment Group, Inc. v. Does 1-9*, No. 04-Civ-2289, 2004 WL 2095581 (S.D.N.Y. Sept. 8, 2004) (not reported in F. Supp.), courts found misjoinder when plaintiffs brought suit against multiple defendants for downloading copyrighted materials using the Fast Track P2P network. Fast Track "allows users to have their computers function as an interactive Internet site, disseminating files for other users to copy." *Elektra Enter. Group, Inc.*, 2004 WL 2095581, at *1. An individual accessing the Fast Track network thus may download an entire file directly from another user's computer. *See id.* The *Interscope Records* and *Elektra Entertainment Group* courts held that the respective complaints fell afoul of Rule 20(a)(2)(A) because they claimed only that the defendants

4

used Fast Track to perform their illegal downloads and did not suggest that the defendants engaged in the same transaction, occurrence, or series of transactions or occurrences. 2004 U.S. Dist. LEXIS 27782, at *10; 2004 WL 2095581, at *7. Notably, the *Interscope Records* court suggested that a showing that a defendant downloaded protected works from another defendant "could conceivably link" them for joinder purposes. 2004 U.S. Dist. LEXIS 27782, at *10. This scenario also arose in cases involving the P2P network Gnutella. In *Fonovisa, Inc. v. Does 1-9*, the court granted severance to a defendant who claimed misjoinder because the "Plaintiffs have failed to allege any facts tending to show that one or more of the Defendants has actually downloaded songs from another Defendant, which could conceivably link the Defendants or show they acted in concert[;]" the plaintiffs simply alleged that the defendants had used the same P2P network. No. 07-1515, 2008 WL 919701, at *5-6 (W.D. Pa. Apr. 3, 2008) (not reported in F. Supp.).

Suits against users of the more sophisticated P2P network eDonkey2000 faced the same obstacles. In *Io Group, Inc. v. Does 1-435*, the court stated that the complaint contained "no factual allegations to support the assertion that the Does defendants are connected to the same transaction, occurrence or series of transactions or occurrences, or any facts that show they specifically acted in concert," and therefore severed the defendants. No. C-10-4382 SI, 2011 WL 445043, at *3 (N.D. Cal. Feb. 3, 2011); *accord Io Group, Inc. v. Does 1-435*, No. C-10-4382 SI, 2011 WL 1219290 (N.D. Cal. Jan. 10, 2011) (citing *BMG Music v. Does*, No. 06-1579 MHP, 2006 U.S. Dist. LEXIS 53237 (N.D. Cal. July 31, 2006); *Twentieth Century Fox Film Corp. v. Does 1-12*, No. C 04-04862 WHA (N.D. Cal. Nov. 16, 2001) (order granting in part and denying in part motion for expedited discovery)).

Plaintiff insists that the BitTorrent protocol now before the court differs from these older forms of P2P transfer due to the newer technology's "deep and sustained collaborati[ve]" nature. (Pl.'s Mot. 10, 13.) Unlike most earlier means of file sharing, BitTorrent can link up to hundreds of users, colloquially known as a "swarm," to distribute data. (Pl.'s Mot. 14 (citing Hansmeier Decl. ¶ 10).) As Plaintiff explains, BitTorrent operates as follows:

> First, the protocol breaks a single large file into a series of smaller distributable pieces. Then, an initial file-provider (the "seeder") intentionally elects to distribute the pieces to third parties. . . . Other users ("peers") on the network download a small

5

> "torrent" file that contains directions on where to find the seeder as well as an index of the pieces. The torrent file is loaded into BitTorrent software, and the software follows the directions in the torrent file to connect to the seeder. When peers connect to the seeder, they download random pieces of the file being seeded. When a piece of download is complete, the peers automatically become seeders with respect to the downloaded pieces. In other words, each peer in a swarm transforms from a pure downloader . . . to a peer that is simultaneously downloading and distributing pieces of a file.

(Pl.'s Mot. 15-16 (citing Hansmeier Decl. ¶¶ 4-10) (internal citations omitted).) For example, an initial "seeder" may upload a low definition file of an episode of a television show that she enjoys, which the BitTorrent protocol divides into tiny pieces. Other users who wish to obtain this low definition version will begin downloading pieces of the file until they have a complete version. Users who successfully have downloaded pieces of the file will commence "seeding" them to other users as they download the remainder of that file. Eventually, numerous users come to download and/or distribute pieces of the file with each other. Together, these individuals constitute a "swarm" -- users seeding and/or downloading the specific file. According to Plaintiff, it is this swarming capability that sets BitTorrent apart from the more limiting, individual-to-individual nature of earlier P2P platforms.

However, Plaintiff glosses over the fact that BitTorrent users may upload different initial files of a given work, which results in the creation of distinct swarms. *See* Lin Ye et al., *A Measurement Study on BitTorrent System*, 3 Int'l J. Comm, Network & Sys. Sci 916, 916 (2000); *see also* Ankur Patel, Comment, *BitTorrent Beware: Legitimizing BitTorrent Against Secondary Copyright Liability*, 10 Appalachian J.L. 117, 119 (2011). Turning back to the example above, a second initial "seeder" may not enjoy television shows in low definition and instead decide to upload a high definition file of the same episode for distribution. Notably, because of the differences between the first, low definition file and the second, high definition file, the participants in the first swarm would not interact with those in the second swarm. (*See* Hansmeier Decl. ¶¶ 8-9 (noting that swarms develop around originally seeded *file*, as opposed to a particular *work*).) That BitTorrent users have downloaded the same copyrighted work does not, therefore, evidence that they have acted together to obtain it.

6

Because of this fundamental constraint on the collaboration between copyright infringers using the BitTorrent protocol, the court finds, for purposes of applying the *Gillespie* test for expedited discovery requests, that Plaintiff's claims against Does 2-97 would otherwise be dismissed for failure to meet the permissive joinder requirement of Rule 20(a)(2)(A).[2] Although Plaintiff explains the protocol and how it differs from its predecessor P2P programs, and specifically claims that Defendants have engaged in a civil conspiracy (Compl. ¶¶ 32-39), Plaintiff still has failed to demonstrate that it has "any right to relief against [Defendants] . . . . arising out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(2)(A). The only commonality between copyright infringers of the same work is that each "commit[ted] the exact same violation of the law in exactly the same way." *LaFace Records, LLC v. Does 138*, No. 07-CV-298, 2008 WL 544992, at *2 (E.D.N.C. Feb. 27, 2008) (not reported in F. Supp.) (citation & quotation marks omitted); *accord Millenium TGA, Inc. v. Does 1-21*, No. 11-2258 SC (N.D. Cal. May 12, 2011) (denying Plaintiff's request to take early discovery due to misjoinder); *Diabolic Video Prods., Inc.*, No. 10-CV-5865, at *6 ("[T]he mere allegation that defendants have used the same peer-to-peer network to infringe a copyrighted work is insufficient to meet the standards for joinder set forth in Rule 20."). The court therefore denies the request for expedited discovery with respect to Defendants Does 2-97 without prejudice.

### III. Conclusion

For the reasons above, the court ORDERS that Plaintiff's Motion for *Ex Parte* Application for Leave to Take Expedited Discovery is GRANTED IN PART with respect to Doe 1. Plaintiff's Motion with respect to Defendants Does 2-97 is DENIED WITHOUT PREJUDICE.

---

[2] Because the court's analysis turns on the first prong of the permissive joinder test, it need not address the second prong. Moreover, the court does not touch on other critical questions, such as whether joinder of Defendants "would prejudice any party," "result in needless delay, " *Call of the Wild Movie, LLC*, 2011 WL 996786, at *4 (citing *Lane v. Tschetter*, No. 05-1414, 2007 WL 2007493, at *7 (D.D.C. July 10, 2007); *M.K. v. Tenet*, 216 F.R.D. 113, 138 (D.D.C. 2002)); *see BMG Music v. Does 1-203*, No. 04-650, 2004 WL 953888, at *1 (E.D. Pa. Apr. 2, 2004) (not reported in F. Supp.), or impair the administrative efficiency of the Court. *See id.* at 6 (citing *London-Sire Records, Inc.*, 542 F. Supp. 2d at 161). It also does not address whether the court may exercise personal jurisdiction over Defendants. *See GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1349-50 (D.C. Cir. 2000); *Block Indus. v. DHJ Indus., Inc.*, 495 F.2d 256, 259 (8th Cir. 1974).

1    Moreover, it is hereby ORDERED that Plaintiff is allowed to serve immediate discovery on
2 Doe 1's ISP by serving a Rule 45 subpoena that seeks information sufficient to identify Doe 1,
3 including the name, addresses, telephone numbers, and email addresses of Doe 1.  The subpoena
4 shall include a copy of this order.

5    It is further ORDERED that the ISP will have 30 days from the date of service upon it to
6 serve Doe 1 with a copy of the subpoena and a copy of this order.  The ISP may serve Doe 1 using
7 any reasonable means, including written notice sent to Doe 1's last known address, transmitted
8 either by first-class mail or via overnight service.  The ISP and Doe 1 each shall have 30 days from
9 the date of service to file any motions in this court contesting the subpoena (including a motion to
10 quash or modify the subpoena).  If that 30-day period lapses without Doe 1 or the ISP contesting the
11 subpoena, the ISP shall have 10 days to produce to Plaintiff the information responsive to the
12 subpoena with respect to Doe 1.

13    It is further ORDERED that the ISP shall not assess any charge to Plaintiff in advance of
14 providing the information requested in the subpoena, and that the ISP that receives a subpoena and
15 elects to charge for the costs of production shall provide a billing summary and cost reports that
16 serve as a basis for such billing summary and any costs claimed by the ISP.

17    It is further ORDERED that the ISP shall preserve all subpoenaed information pending the
18 ISP's delivering such information to Plaintiff or the final resolution of a timely filed and granted
19 motion to quash the subpoena with respect to such information.

20    It is further ORDERED that Plaintiff may use any information disclosed in response to a
21 subpoena solely to protect its rights under the Copyright Act, 17 U.S.C. § 101 *et seq.*

22    IT IS SO ORDERED.

24 Dated:  July 20, 2011

                                                    _____
                                                    DONNA M. RYU
                                                    United States Magistrate Judge